**THIS ORDER IS SIGNED AND ENTERED.**

**Dated: February 6, 2025**



**Hon. Rachel M. Blise**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br><br>    Emin Buzhunashvili and<br>    Irene Gelfand,<br><br>        Debtors. | Case No. 24-10209-rmb<br><br>Chapter 7 |
| Seymour Badalov and<br>Natalia Khlestova,<br><br>        Plaintiffs,<br><br>v.<br><br>Emin Buzhunashvili and<br>Irene Gelfand,<br><br>        Defendants. | Adversary No. 24-00054-rmb |

**DECISION AND ORDER GRANTING IRENE GELFAND'S MOTION TO DISMISS**

Plaintiffs Seymour Badalov and Natalia Khlestova (together, "Plaintiffs") filed a four-count Amended Complaint against debtors Emin Buzhunashvili and Irene Gelfand. ECF No. 9 ("Am. Compl."). Badalov and Khlestova ask the Court to declare a debt nondischargeable under 11 U.S.C. § 523(a)(2)(A). They assert three additional causes of action that do not appear to depend on the outcome of the nondischargeability claim: (1) a request for a declaratory judgment

on the validity of a Business Purchase Agreement, (2) a request that the Court declare the existence of a de facto partnership, and (3) a claim for promissory estoppel. Buzhunashvili answered the Amended Complaint, but Gelfand filed a motion to dismiss. Gelfand argues that the Amended Complaint does not state a claim against her. ECF No. 10. For reasons explained below, the Court grants the motion to dismiss.

## FACTUAL BACKGROUND

For purposes of the motion to dismiss, the Court accepts as true the following facts alleged in the Amended Complaint. Buzhunashvili owns a restaurant named Caspian Grill located on Gammon Road in Madison, Wisconsin (the "Gammon Road Restaurant"). In January 2023, Buzhunashvili informed Badalov that he either was opening or had opened a new restaurant, also named Caspian Grill, located on Junction Road in Madison, Wisconsin (the "Junction Road Restaurant")[1], and he asked Badalov to invest in the Junction Road Restaurant as a business partner. Am. Compl. ¶¶ 8-9. In February 2023, Badalov traveled to Madison from where he lived in Brooklyn, New York to see the Junction Road Restaurant, and during the visit he agreed to invest in the restaurant. *Id.* ¶¶ 10-11.

Between February 27, 2023 and June 6, 2023, Badalov provided cash and checks to Buzhunashvili and his entities in the total amount of $91,900. Am. Compl. ¶¶ 17-20. Badalov understood that these payments were an investment in the Junction Road Restaurant. *Id.* ¶ 21. Buzhunashvili and Gelfand had access to Badalov's personal credit card to pay for business expenses, and they incurred charges of $17,569 between April 17 and September 8, 2023 to pay for furniture, equipment, and other expenses for the Junction Road Restaurant. *Id.* ¶¶ 22-23.

---

[1] The Amended Complaint seems to interchangeably refer to Caspian Grill Restaurant, the Restaurant, Caspian Grill Banquet, and the Banquet. The Court has construed all of these names in the Amended Complaint as referring to the Junction Road Restaurant.

Plaintiffs allege that some of the items purchased for the Junction Road Restaurant were taken from that restaurant and used for the Gammon Road Restaurant, though they do not allege who took the items. *Id.* ¶ 26. Plaintiffs also allege that Buzhunashvili and Gelfand used money from the Junction Road Restaurant to pay their personal expenses, though they do not allege whether that money was taken directly from Badalov's cash investments or was taken from the restaurant's operating income. *Id.* ¶ 27.

In September 2023, Badalov, Khlestova, and their family moved to Wisconsin, and Badalov began working at both the Gammon Road Restaurant and the Junction Road Restaurant. Am. Compl. ¶ 29. He worked a total of 1,106 hours for both restaurants between September 10, 2023 and January 1, 2024, and he received only $1,900 in compensation for his work. *Id.* ¶ 29-30. Khlestova similarly worked for both restaurants during the same time period, working in person at the Gammon Road Restaurant and making baked goods from home for the Junction Road Restaurant. *Id.* ¶ 31. She was paid $2,400 for her work. *Id.*

On October 31, 2023, at Badalov's request, Badalov and Buzhunashvili signed a Business Purchase Agreement related to E.M.I.L. Corp d/b/a Caspian Grill Restaurant. Am. Compl. Ex. A. Gelfand drafted the Business Purchase Agreement. Am. Compl. ¶ 35. Plaintiffs allege that the agreement gave Badalov, through his company Remat Enterprises, Inc., a share in E.M.I.L. Corp., which apparently owns the Junction Road Restaurant. *Id.* ¶ 36. The agreement provides that the purchase price was $90,000 and that "Payment of the Purchase Price is complete by the agreement date." *Id.* ¶ 38 & Ex. A.

On November 28, 2023, Buzhunashvili requested Badalov invest an additional $3,000 to help cover restaurant expenses, which Badalov did. Am. Compl. ¶¶ 41-42. Badalov and Khlestova also continued working at the Junction Road Restaurant for little or no compensation

3

on the assumption that Badalov was part owner of the restaurant. *See id.* ¶¶29-31. Plaintiffs allege that Buzhunashvili and Gelfand began removing assets from the Junction Road Restaurant in December 2023 and put the items in a storage unit. *Id.* ¶ 43. Plaintiffs claim an ownership interest in the Junction Road Restaurant, an ownership interest in the items in storage, and seek to except from discharge the funds invested in the Junction Road Restaurant.

## DISCUSSION

### Applicable Pleading Standard

Gelfand moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012. The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all well-pleaded factual allegations in Plaintiffs' complaint and draws all reasonable inferences in Plaintiffs' favor. *Id*. at 1520-21. Exhibits attached to the complaint are also considered as part of the pleadings. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, the Amended Complaint must meet the pleading standard under Federal Rule of Civil Procedure 8, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7008. Rule 8 requires a complaint contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations "must be enough to raise a right to relief above the speculative level," meaning that they are more than "merely consistent with" the defendant's liability. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). Exactly how specific a complaint must be varies with the complexity of a plaintiff's claim, but "the plaintiff must give enough details

4

about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

To the extent the Amended Complaint alleges fraud, the facts alleged must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7009. Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). That is, the plaintiff must allege the "'who, what, when, and where' of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

### Count 1 – Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)

Plaintiffs' first claim is for nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A). That section excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To except a debt from discharge under § 523(a)(2)(A), the creditor must prove the existence of an underlying debt along with the following three elements: (1) that the debtor made a false representation or omission, which the debtor either knew was false or made with reckless disregard for the truth; (2) that the debtor possessed an intent to deceive or defraud; and (3) that the creditor justifiably relied on the false representation. *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011); *see also Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010).

Plaintiffs' claim fails at the antecedent element—the existence of an underlying debt. The statute excepts from discharge "any debt" that meets certain criteria. 11 U.S.C. § 523(a). A "debt" is "liability on a claim," and a "claim" is a "right to payment." 11 U.S.C. § 101(5)(A),

5

(12). Thus, a plaintiff must have a pre-existing right to payment from a debtor before the debt can be declared nondischargeable. That is, the debtor must be liable to the plaintiff under a law other than the Bankruptcy Code, because § 523(a) does not create or impose liability where none existed before bankruptcy. *See S & L Enters. I, LLC v. Eisaman (In re Eisaman)*, 387 B.R. 219, 224 (Bankr. N.D. Ind. 2008) ("The provisions of § 523(a) do not make a debtor liable to a creditor. They merely determine whether an existing liability is a dischargeable one.").

Plaintiffs do not allege in their Amended Complaint or argue in their brief that Gelfand is liable to them for a particular debt that existed pre-bankruptcy. The Court presumes, though it is by no means obvious, that Plaintiffs' theory is that Gelfand is liable to them for intentional misrepresentation or fraud under Wisconsin state law. Such a claim requires a plaintiff to establish the following elements: "(1) that the defendant made a representation of fact to the plaintiff; (2) the representation was false; (3) the plaintiff believed and relied on the misrepresentation to the plaintiff's detriment; (4) the defendant made the misrepresentation knowingly or recklessly; and (5) the defendant did so intending to deceive and induce the plaintiff." *Pagoudis v. Keidl*, 2023 WI 27, ¶ 13, 406 Wis. 2d 542, 988 N.W.2d 606.

The only representation identified in the Amended Complaint that Gelfand made was the Business Purchase Agreement, because she drafted it. Assuming the words in a contract can constitute a representation, the Amended Complaint would satisfy the first element. Plaintiffs also satisfactorily allege that Badalov relied on Gelfand's statements in the contract to his detriment by continuing to work at the Junction Road Restaurant for little or no compensation and by investing an additional $3,000 in the Junction Road Restaurant.

Where the Amended Complaint falls short is the lack of any allegation that Gelfand made a statement that was untrue. And without that allegation, Plaintiffs cannot and do not allege that

Gelfand knowingly made an untrue statement with the intent to deceive. As noted, the only representation by Gelfand identified in the Amended Complaint is the Business Purchase Agreement, and there is no allegation that the statements in the Business Purchase Agreement were untrue. Indeed, Plaintiffs attempt in another claim to enforce the language of the agreement as true. *See* Am. Compl. ¶¶ 55-58. While a plaintiff is permitted to plead alternate theories of liability, Plaintiffs here do not plead alternatively with respect to the language of the Business Purchase Agreement. Rather, in alleging that the debt owed to Plaintiffs is nondischargeable, Plaintiffs allege that "*Buzhunashvili's* statements to Badalov were untrue." Am. Compl. ¶ 48 (emphasis added). They never allege that any statement made by *Gelfand* was untrue.

The Amended Complaint therefore is not sufficient to state a claim that Gelfand is liable to Plaintiffs for intentional misrepresentation or fraud under Wisconsin law. In the absence of any argument from Plaintiffs, the Court will not further explore Wisconsin or any other law in search of a theory that would render Gelfand liable to them. Because Plaintiffs have not sufficiently pleaded the existence of an underlying, prepetition debt, they have not met the pleading requirements for a nondischargeability claim under § 523(a)(2)(A).

The Court pauses to discuss the application of *Bartenwerfer v. Buckley*, 598 U.S. 69, 72 (2023), to this case because it appears that Plaintiffs may have misconstrued the Supreme Court's holding. In *Bartenwerfer*, a husband and wife remodeled and sold a house as business partners. *Id.* at 72. The husband did most of the work during the process, and the wife was largely uninvolved. *Id.* After the sale, the buyer discovered several undisclosed defects. *Id.* The buyer sued the couple in state court, alleging various claims for breach of contract, negligence, and nondisclosure, and the court entered judgment against both of them. *Id.* at 72-73.

The couple filed bankruptcy, and the buyer sought to have the judgment debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A). *Id.* at 73. At issue in the case was whether § 523(a)(2)(A) excepts from discharge only debts for fraud committed by the debtor herself, as the wife argued, or whether the statute also excepts debts for money obtained by fraud, even if the debtor was not the fraudster, as argued by the buyer. The Supreme Court agreed with the buyer. *Id.* at 74-79. The Court held that, "[w]ritten in the passive voice, § 523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it." *Id.* at 72. Because the money owed to the buyer was obtained by fraud (*i.e.*, the husband's fraud), the debt owed by the wife was nondischargeable under § 523(a)(2)(A) because she was liable for the same debt under state law.

Crucial to the ultimate result in *Bartenwerfer* was the prepetition judgment against the wife—she already owed a debt to the buyer. Here, in contrast, Plaintiffs have not identified any law that would attribute liability to Gelfand under the facts alleged in the Amended Complaint. The Court will therefore grant Gelfand's motion to dismiss as to Count 1.

### Counts 2, 3, & 4

Plaintiffs also assert claims for a declaratory judgment related to the Business Purchase Agreement (Count 2), for a declaratory judgment as to a de facto partnership (Count 3), and for promissory estoppel (Count 4).[2] It is not clear from the Amended Complaint whether Plaintiffs meant to plead these claims against Gelfand. The parties' briefing addresses only the

---

[2] It is unclear whether this Court has jurisdiction to address these claims, because they seem to relate to a corporate entity that is not a debtor and is not a party to this adversary. No party has raised the issue of jurisdiction, and the Court will dismiss these claims as to Gelfand in any event, so the Court will leave the issue of jurisdiction as to these claims against Buzhunashvili for another day.

8

nondischargeability claim in Count 1, and Plaintiffs make no effort in their brief to contest dismissal of Counts 2, 3, and 4. The Court will dismiss all three claims as to Gelfand.

The allegations in Count 2 relate to the ownership of E.M.I.L. Corp. and the validity of the Business Purchase Agreement. Plaintiffs do not allege that Gelfand has any ownership interest in E.M.I.L. Corp., and they allege that the Business Purchase Agreement "is a valid, binding contract between Buzhunashvili and Badalov." Am. Compl. ¶ 55. If Gelfand is not a party to the contract, then the Plaintiffs cannot have a claim for declaratory judgment against Gelfand with respect to the contract.

The allegations in Count 3 similarly include no reference to Gelfand. Plaintiffs allege that "Badalov and Buzhunashvili are partners with respect to the operation of the [Junction Road Restaurant]." Am. Compl. ¶ 66. Because Plaintiffs do not allege that Gelfand is a de facto partner, Plaintiffs have no claim against her for declaration of a de facto partnership.

Plaintiffs allege in their promissory estoppel claim in Count 4 that both defendants "should be estopped from asserting that Badalov" is not an owner of E.M.I.L. Corp. and is not an owner of the Junction Road Restaurant. Am. Compl. ¶¶ 79-80. Those are the only allegations that relate to Gelfand. The rest of the allegations in Count 4 relate to representations made by Buzhunashvili. A promissory estoppel claim under Wisconsin law requires, among other things, a promise made by the defendant. *See Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 694, 133 N.W.2d 267, 273 (1965). Plaintiffs do not allege a promise by Gelfand in Count 4, so they have not stated a claim against her for promissory estoppel.

## CONCLUSION

For the foregoing reasons, the Court will grant Gelfand's motion to dismiss as to all counts in the Amended Complaint. The Court cannot say there is no set of facts Plaintiffs could plead that would allow their claims to proceed. The Court will therefore grant Plaintiffs leave to

further amend their complaint. *See, e.g.*, *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").

Accordingly, IT IS HEREBY ORDERED:

1. Irene Gelfand's motion to dismiss (ECF No. 10) is GRANTED.

2. Plaintiffs' claims against Irene Gelfand are DISMISSED.

3. Plaintiffs are granted leave to file a further amended complaint on or before **February 28, 2025**.

# # #