**THIS ORDER IS SIGNED AND ENTERED.**

**Dated: March 27, 2026**



*Rachel Blise*
**Hon. Rachel M. Blise**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | |
| | Case No. 24-10209-rmb |
| Emin Buzhunashvili and Irene Gelfand, | Chapter 7 |
| Debtors. | |
| Seymour Badalov and Natalia Khlestova, | |
| Plaintiffs, | |
| | Adversary No. 24-00054-rmb |
| v. | |
| Emin Buzhunashvili and Irene Gelfand, | |
| Defendants. | |

**DECISION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Seymour Badalov invested in EMIL Corp., a restaurant business

owned by his friend, debtor-defendant Emin Buzhunashvili.  Shortly thereafter, the

business floundered, and the parties' relationship soured.  Badalov now claims he

invested in the business based on fraudulent statements made by Buzhunashvili

and his wife, Irene Gelfand (together, "Defendants").  Badalov and his wife, Natalia

Khlestova (together, "Plaintiffs"), seek to have a claim for fraud declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A).  None of the statements Plaintiffs rely on are actionable misrepresentations under Wisconsin law, so there is no underlying debt for the Court to declare nondischargeable.  In addition, Plaintiffs cannot establish required elements of their § 523(a)(2)(A) claim.  Defendants are entitled to judgment as a matter of law dismissing the complaint.

## BACKGROUND

The following facts are either undisputed or construed in the light most favorable to Plaintiffs.

### Badalov's Investment in EMIL Corp.

Buzhunashvili operated a restaurant named Caspian Grill located on Gammon Road in Madison, Wisconsin.  At some point, Buzhunashvili opened another restaurant and banquet hall named Caspian Grill Banquet (the "Banquet") located at 610 Junction Road in Madison, Wisconsin.  The Banquet was owned by E M I L Corp. ("EMIL Corp."), which was solely owned by Buzhunashvili.

Badalov and Buzhunashvili were long-time personal friends.  In or around 2023, Buzhunashvili and Badalov began discussing the idea of Badalov investing in EMIL Corp.  Badalov traveled to Madison, Wisconsin in February 2023 along with his brother to see the business before investing.  (Am. Compl., ECF 24 ¶ 10.)  The parties dispute the scope of information that Badalov and his brother reviewed during their visit to Madison.  Badalov agrees that he "discussed the Banquet with his brother in [sic] prior to investing in early 2023, who had been present at prior meetings and reviewed the information provided by the Defendants."  (Richman

2

Decl., ECF 54-1 at 260-61, Resp. to Interrog. No. 7.)  Badalov's brother advised that

the business "was in poor shape" and "struggling financially," and he recommended

that Badalov not invest.  (*Id.*; Resp. to PFOF, ECF 58 ¶ 4.)  Buzhunashvili also told

Badalov that the business had financial issues.  "Whenever Badalov spoke with

[Buzhunashvili], [Buzhunashvili] would tell him that the business was struggling to

pay rent and to pay for operations."  (Richman Decl., ECF 54-1 at 264, Resp. to

Interrog. No. 15.)  "Defendants consistently told Badalov that they needed money

and the financial situation of the Banquet was dire."  (*Id.*)  Badalov also saw

firsthand "the financial problems that the business was having."  (Richman Decl.,

ECF 54-1, at 157-58, Trial Trans.)  He "saw that . . . one week is good, one week is

not good."  (*Id.*)

Despite this knowledge regarding the business's financial issues, Badalov

decided to invest in EMIL Corp. based on his childhood friendship with

Buzhunashvili.  (*Id.* at 158 ("most important for me was that we are friends and we

can help each other and we can find out the -- the way to solve the problems"); Resp.

to PFOF, ECF 58, ¶ 6.)  Plaintiffs say Badalov was also persuaded by Defendants'

representations regarding "the potential of the business."  (*Id.*)  Specifically,

Plaintiffs assert that in May 2023, Buzhunashvili and Gelfand came to Cancun,

Mexico while Badalov was on vacation with his family there and during this time,

"Gelfand bragged to Plaintiffs about how successful the Banquet was." (Am. Compl.,

ECF 24, ¶ 16.)  At a June 3, 2023 meeting "Defendants represented that the reason

they needed a partner was to expand the business," and at a July 2023 meeting

3

"Defendants represented that the business was growing, and that they were potentially looking to open a third restaurant." (*Id.* ¶¶ 21, 24.) Finally, Plaintiffs say that "Defendants represented to Badalov that the Banquet was solvent and financially successful in order to obtain money from Badalov." (*Id.* ¶ 67.) Badalov says he had no prior experience in the restaurant business before investing in the Banquet, and that he relied entirely on Defendants to provide information about the business's financial situation and to provide guidance regarding the restaurant industry. (Badalov Decl., ECF 57, ¶¶ 5, 9.)

The parties dispute the exact amount of Badalov's investment in EMIL Corp. but agree that it was at least $72,269.00. (Resp. to PFOF, ECF 58, ¶ 13.) Plaintiffs' Amended Complaint alleges that Badalov invested the following amounts: In late February 2023, Badalov gave Buzhunashvili a check in the amount of $35,000. (Am. Compl., ECF 24, ¶ 13.) On April 17, 2023, Badalov deposited $2,500 and $4,500 in cash in a bank account controlled by Buzhunashvili. (*Id.* ¶ 17.) Also on April 17, 2023, Badalov used his personal credit card to purchase furniture for the Banquet in the amount of $7,290. (*Id.* ¶ 35.) On June 6, 2023, Badalov gave Defendants another $15,000 in cash. (*Id.* ¶ 22.) On July 5, July 15, August 5, and September 8, 2023, Badalov used his personal credit card to make $10,279 in purchases for the Banquet. (*Id.* ¶¶ 35, 36.) Badalov also purchased $2,500 in food and $1,500 in restaurant equipment for the Banquet. (*Id.* ¶ 26.) Buzhunashvili represented that funds received from Badalov were investments in EMIL Corp. and that he "could share in profits and losses" of the business. (Answer, ECF 25, ¶ 62.)

Buzhunashvili and Badalov formalized their investment agreement by entering into a Business Purchase Agreement on October 31, 2023 (the "Agreement"). (Resp. to PFOF, ECF 58, ¶ 9; *see also* Badalov Decl. Ex. A, ECF 57.) Pursuant to the Agreement, the parties agreed that Badalov, through his company Remat Enterprises Inc., would purchase 25% of EMIL Corp. for $90,000. (*Id.*) The Agreement further provides that "[p]ayment of the Purchase Price is complete by the agreement date." (*Id.*)

In the fall of 2023, Badalov, his wife, and their family moved to Madison, Wisconsin to work at the Banquet. They both provided services to the Banquet through the fall of 2023. The parties disagree whether either received any compensation for their services. The Banquet ceased operating on January 1, 2024. (Resp. to PFOF, ECF 58, ¶ 15.)

**The Forney Lawsuit**

Separately, on January 30, 2023, former EMIL Corp. investor David Forney filed a complaint in the Circuit Court for Dane County, Wisconsin against EMIL Corp. and Buzhunashvili (the "Forney Lawsuit"). (Buzhunashvili Decl., ECF 55-1, ¶ 4.) Buzhunashvili and Forney settled the claims, and the suit was dismissed on May 2, 2023. (Resp. PFOF, ECF 58, ¶ 16; Buzhunashvili Decl., ECF 55-1, ¶ 5.) Payments to Forney pursuant to the settlement agreement were made timely and in accordance with the settlement terms until November 2023. (Resp. to PFOF, ECF 58, ¶ 17.) In December 2023, the Forney Lawsuit was reopened, and the state court entered judgment against Buzhunashvili. (Resp. to PFOF, ECF 58, ¶ 18; Richman Decl., ECF 54-1, at 296-97.)

Badalov asserts neither of Defendants disclosed the existence of the Forney Lawsuit before he invested in EMIL Corp.  (Badalov Decl., ECF 57, ¶3.)  Badalov says he learned about the Forney Lawsuit in November 2023, after he signed the Agreement.  (Resp. to Interrog. 19, ECF 54-1 at 266; Badalov Decl., ECF 57, ¶ 4.)  Badalov says that if he had known about the Forney Lawsuit, including that Forney was Buzhunashvili's former business partner, Badalov would not have invested in EMIL Corp.  (Badalov Decl., ECF 57, ¶ 8.)

### Procedural History

Defendants filed a chapter 13 bankruptcy petition on February 2, 2024, and the case was converted to one under chapter 7 on May 14, 2024.  The chapter 7 trustee determined that there were no assets to administer for creditors, and the Court entered an order of discharge on September 19, 2024.  In their bankruptcy schedules, Defendants consistently maintained that Buzhunashvili owned 100% of EMIL Corp.  (*See* Case No. 24-10209, ECF 1 at 13 (Feb. 2, 2024), ECF 28 at 7 (Apr. 26, 2024), ECF 75 at 8 (July 17, 2024), ECF 99 at 7 (May 7, 2025).)

On January 1, 2025, EMIL Corp. sued both Plaintiffs in Dane County, Wisconsin Circuit Court seeking return of business assets in Plaintiffs' possession, as well as damages for conversion and judicial dissolution of the business. (Richman Decl., ECF 54-1, ¶ 2.)  The state court held a trial on June 30, 2025, and entered an Order for Judicial Dissolution of E M I L Corp. and Liquidation of E M I L Corp. Assets on August 1, 2025.  (*Id.* ¶¶ 3, 4; *id.*, Ex. B, at 211-12.)  In its order, the state court declared that "EMIL Corp. is owned 75% by Emin Buzhunashvili and 25% by Seymour Badalov."  (*Id.* at 212.)  The court also ordered

6

dissolution of the company and liquidation of the company's assets.  (*Id.*)  The parties now agree that all funds Badalov gave to Buzhunashvili and all purchases made by Badalov for the Banquet were capital investments in EMIL Corp. and were not loans to EMIL Corp. or Defendants.  (Resp. to PFOF, ECF 58, ¶ 11.)

Plaintiffs timely filed this adversary proceeding on August 16, 2024 seeking a declaration that debts owed to them by Defendants are nondischargeable under 11 U.S.C. § 523(a)(2)(A).  Plaintiffs filed the operative Amended Complaint on February 28, 2025.  (ECF 24.)

**JURISDICTION**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the order of reference from the district court pursuant to 28 U.S.C. § 157(a).  *See* General Order No. 161 (W.D. Wis. June 12, 1984) (available at https://www.wiwd.uscourts.gov/administrative-orders) (last visited March 25, 2026). Determination of the dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  To the extent the determination of dischargeability requires consideration of issues impacted by the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011), Plaintiffs affirmative consented to this Court's entry of a final order (ECF 24 ¶ 4), and Defendants consented by their silence.  *See* Fed. R. Bankr. P. 7008, 7012; *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 683 (2015) ("Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express.").

## DISCUSSION

Summary judgment is appropriate if the pleadings and affidavits on file show there is no genuine dispute as to any material fact and the moving party can establish it is entitled to judgment as a matter of law.  *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56.  An issue of material fact is a question that must be answered to determine the rights of the parties under substantive law and that can properly be resolved only "by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The movant may meet his burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted).  If the moving party meets his burden, the burden shifts to the nonmoving party to show there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Plaintiffs object to the discharge of a debt owed to them under 11 U.S.C. § 523(a)(2)(A), which excepts from discharge debts for money "obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). "[E]xceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor." *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992).

8

The existence of a prepetition debt is a threshold issue for a determination of nondischargeability under § 523(a)(2)(A). The debtor must owe a debt under non-bankruptcy law before the bankruptcy court can declare that debt to be excepted from the discharge. *E.g.*, *S & L Enters. I, LLC v. Eisaman (In re Eisaman)*, 387 B.R. 219, 224 (Bankr. N.D. Ind. 2008) ("[T]he first step in determining whether or not a particular debt is dischargeable is to make certain that there is, indeed, a debt owing by the debtor to the creditor. Without such an obligation, there is no debt which could be excepted from the scope of the debtors' discharge.").

Plaintiffs claim that Defendants owe them a debt under Wisconsin law for intentional misrepresentation. To prove a claim of intentional misrepresentation, a plaintiff must show that:

> (1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment.

*Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 699 N.W.2d 205 (quoting *Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA*, 223 Wis. 2d 704, 718-19 (Ct. App. 1998)). An intentional misrepresentation claim may arise either from a "failure to disclose a material fact" or from a "statement of a material fact which is untrue." *Kaloti*, 2005 WI 111, ¶ 13 (quoting *Ramsden*, 223 Wis. 2d at 713).

9

Plaintiffs rely on three alleged misrepresentations:[1] (1) Defendants falsely represented to Badalov that the funds he gave Buzhunashvili were investments in EMIL Corp. and that Badalov would share in the business's profits and be a part owner of EMIL Corp. (the "Partnership Representation"); (2) Defendants misrepresented the financial state of the business such that Badalov thought he was investing in a more financially healthy company (the "State of the Business Representations"); and (3) Defendants failed to disclose the existence of the Forney Lawsuit before Badalov invested in EMIL Corp. (the "Forney Lawsuit Omission").

### 1.    The Partnership Representation

Plaintiffs' first theory is that Defendants falsely represented that Badalov would receive an ownership interest in EMIL Corp. in exchange for his investments. Plaintiffs say the representation was false, that Defendants deceived Badalov, and that Defendants never intended to give Badalov an interest in the business.  In support of their argument, Plaintiffs point to Defendants' bankruptcy schedules, in which they asserted that EMIL Corp. was 100% owned by Emin Buzhunashvili. (*See* Case No. 24-10209, ECF Nos. 1 at 13, 28 at 7, 75 at 8, 99 at 7; *see also* Richman Decl., ECF 54-1 at 267, Resp. to Interrog. 22.)  Plaintiffs also rely on the fact that Defendants maintained that same position in the state court litigation filed by EMIL Corp. until the state court ruled against them.

---

[1] The Amended Complaint includes allegations related to several other misrepresentations made by Defendants, but the summary judgment briefing, confirmed by Plaintiffs' counsel at oral argument, makes clear that Plaintiffs rely only on the three alleged misrepresentations discussed herein.

Plaintiffs effectively argue that Defendants repudiated the Agreement, under which Badalov invested in EMIL Corp.  The problem with this argument is that Plaintiffs already sought and obtained an order in state court ***enforcing*** the Agreement and declaring that Badalov owns 25% of EMIL Corp.

Wisconsin law incorporates the "election of remedies" doctrine, which is "an equitable principle barring one from maintaining inconsistent theories or forms of relief."  *Head & Seemann, Inc. v. Gregg*, 104 Wis. 2d 156, 159 (Ct. App. 1981) (citation omitted), *aff'd and remanded*, 107 Wis. 2d 126 (1982).  The underlying purpose of the doctrine is "to prevent double recovery for the same wrong." *Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 17, 302 Wis. 2d 41, 734 N.W.2d 855 (citation omitted).

"The classic application of the election of remedies doctrine is that a defrauded party has the election of either rescission or affirming the contract and seeking damages.  The choice is forced with respect to alternative theories in a single lawsuit because of inconsistency of both rescinding and affirming the contract."  *Gregg*, 104 Wis. 2d at 159 (citing *First Nat'l Bank & Trust Co. v. Notte*, 97 Wis. 2d 207, 225 (1980) and *Seidling v. Unichem, Inc.*, 52 Wis. 2d 552, 557 (1971)).  That is, "one may not cancel a contract and also sue to enforce compliance with the contract's provisions."  *Wickenhauser*, 2007 WI 82, ¶ 17 (cleaned up).  *See also Jolin v. Oster*, 55 Wis. 2d 199, 205 (1972) ("While it might well be true that respondent has an action either in law or in equity, once the plaintiff has elected his remedy, he is bound thereby and could not bring an action in equity after

11

proceeding at law."); *Gaugert v. Duve*, 217 Wis. 2d 164, 178 (Ct. App. 1998) (holding that litigant was "bound by his decision to elect one right (to execute the contract) over an alternative (rescission)"); *Harley-Davidson Motor Co. v. PowerSports, Inc.*, 319 F.3d 973, 988 (7th Cir. 2003) ("[U]nder Wisconsin law, if a party's assent to a contract is induced by material or fraudulent misrepresentations, that person can either seek rescission or damages. But Wisconsin law is quite clear that the defrauded party cannot seek both[.]").

Badalov already sought to enforce the Agreement in state court and won. Thus, Badalov has the partnership interest Plaintiffs say Defendants did not intend to give him. Plaintiffs cannot now *also* seek return of their investment (i.e. recission of the Agreement) based on Defendants' alleged misrepresentations to Badalov that he would be an owner of the company. If successful, Plaintiffs would essentially receive a double recovery—they would get both 25% of the company (whatever it may be worth) *and* get the amount of their investment back. The election of remedies doctrine precludes such a result. Because Plaintiffs have already elected enforcement of the contract, they cannot seek to recover damages based on the alleged invalidity of the Agreement due to misrepresentation.

For the same reason, Plaintiffs have no reliance damages for the Partnership Representation. Badalov says he would not have invested in EMIL Corp. if he had known that he would not receive an ownership interest in the company. He now has the ownership interest he was promised. Plaintiffs do not explain how they

12

relied to their detriment on the Partnership Representation when they received

exactly what they say Defendants promised them.

## 2. The State of the Business Representations

Plaintiffs next contend that Defendants made various representations

regarding the financial health and prospects of EMIL Corp. They rely on the

following statements:[2]

- "In May 2023, while Badalov was on vacation with his family in Cancun, Mexico, Buzhunashvili and Gelfand came to Cancun, Mexico. During this time Gelfand bragged to Plaintiffs about how successful the Banquet was." (Am. Compl., ECF 24, ¶ 16.)

- "At the June 3, 2023 meeting, the Defendants represented that the reason they needed a partner was to expand the business." (*Id.* ¶ 21.)

- "At the July 2023 meeting the Defendants represented that the business was growing, and that they were potentially looking to open a third restaurant." (*Id.* ¶ 24.)

- "[T]he Defendants represented to Badalov that the Banquet was financially successful and that they needed money in order to expand the business." (*Id.* ¶ 63.)

- "The Defendants represented to Badalov that the Banquet was solvent and financially successful in order to obtain money from Badalov." (*Id.* ¶ 67.)

Plaintiffs' claim based on these statements fails for several reasons. The oral

statements regarding EMIL Corp.'s financial condition are not eligible for an

---

[2] Notably, Plaintiffs' opposition to Defendants' motion for summary judgment does not identify or present evidence of any specific statements that Defendants made regarding the business; they say only that "Defendants misrepresented the condition of their business." *See* ECF 56 at 9. Because the statements identified in the Amended Complaint are not actionable, the Court has assumed that the Plaintiffs could present evidence of these statements. However, Defendants could be entitled to summary judgment based solely on the Plaintiffs' failure to present evidence to support their claim.

exception to discharge under § 523(a)(2), the statements are non-actionable opinion or puffery, and Plaintiffs cannot prove that they reasonably relied on the statements.

### A.   *Debts based on oral statements regarding an insider's financial condition are dischargeable.*

Section 523(a)(2)(A) provides that a debt can be declared nondischargeable to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).  A statement is "'respecting' a debtor's financial condition" if "it has a direct relation to or impact on the debtor's [or an insider's] overall financial status."  *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 720 (2018).  And an "insider" is defined as a "corporation of which the debtor is a director, officer or person in control."  11 U.S.C. § 101(31); *In re Beach*, 651 B.R. 359, 375 (Bankr. E.D. Wis. 2023).

A statement "respecting the debtor's or an insider's financial condition" can be non-dischargeable, but only if it is "a statement in writing."  *See* 11 U.S.C. § 523(a)(2)(B); *Beach*, 651 B.R. at 374-75 (applying "statement in writing" requirement); *Andringa v. Acker (In re Acker)*, Adv. No. 19-2089-kmp, 2021 WL 1346575, at *4 (Bankr. E.D. Wis. Mar. 31, 2021) ("If the debtor makes a false statement respecting the financial condition of an 'insider' (i.e. a corporation of which the debtor is a director, officer or person in control), then the alleged false representation must also be in writing to be nondischargeable.").  Under the scheme

created by § 523(a)(2)(A) and (B), a debt obtained by an oral statement respecting the debtor's or an insider's financial condition is dischargeable.

EMIL Corp. qualifies as an insider because Buzhunashvili controlled the company at all times and owned 100% of the company until Badalov invested. Any claim based on the oral statements made by Defendants as to their and EMIL Corp.'s financial condition is dischargeable under § 523(a)(2).

Plaintiffs have conceded that none of Defendants' statements were in writing as required under § 523(a)(2)(B). When asked at oral argument whether there is any reason why the above statements do not fall under the "statement in writing" requirement of § 523(a)(2)(B), counsel for Plaintiffs argued that Defendants' statements about the company were not *just* about the company's financial condition because they *additionally* paint a larger picture of the prospect of the parties' relationship as friends and as business partners. But even if the Court were to agree with counsel that these statements fit into a broader narrative from Defendants about the parties' relationship, the statements that Plaintiffs allege are false are statements about the company's success, solvency, and potential expansion. An suggestions about the parties' future relationship are not statements as to present or existing facts. As explained below, claims based on future predictions are not actionable representations without proof that Defendants had information negating the representations.

Plaintiffs' claimed debt based on the State of the Business Representations cannot be declared nondischargeable under § 523(a)(2).

15

### B.   *The statements do not relate to present or existing facts.*

Wisconsin law is clear that neither a statement of opinion nor mere puffery can support an intentional misrepresentation claim.  *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶¶ 41-44, 270 Wis. 2d 146, 677 N.W.2d 233 (recognizing that sales "puffery" cannot be an actionable misrepresentation of fact); *see also Toshner v. Goodman*, No. 18-CV-2005-bhl, 2024 WL 473616, at *6 (E.D. Wis. Feb. 7, 2024) (holding that statements regarding a "safe" and "low-risk" investment were "qualitative statements, opinions, or sales puffery" that were "not actionable misstatements of fact"); *Adaptive Micro Sys. LLC v. AdsLED, Inc.*, No. 11-C-668, 2011 WL 13217958, at *4 (E.D. Wis. Oct. 18, 2011) (holding that descriptors like "high quality," "state-of-the-art," "carefully designed," and "superior," are "classic puffery").

The State of the Business Representations include statements that the Banquet, and EMIL Corp., was financially successful (Am. Compl., ECF 24, ¶¶ 16, 63, 67) and that the business was growing or would expand (*id.* ¶¶ 21, 24, 63). Vague statements about the "success" or "potential success" of a business are not statements of fact on which Plaintiffs could rely; they are mere opinion or puffery without concrete information.  Success is in the eye of the beholder.  Success for one company might be considered failure for another.

In addition, an actionable misrepresentation must relate to present or pre-existing facts; "unfulfilled promises or statements made as to future events" are not actionable.  *Hartwig v. Bitter*, 29 Wis. 2d 653, 657 (1966).  An exception to this rule

16

exists only where the plaintiff can prove that the defendant was "aware of present facts incompatible with that opinion." *Id.* at 658.

Defendants' statements that their business would grow or expand in the future are statements about future events, not statements of existing or present fact. Plaintiffs presented no evidence on summary judgment that Defendants were aware of any present facts that would negate their expressed opinion that the business could or would grow or expand in the future.

### C.    Plaintiffs could not have justifiably relied on the State of the Business Representations.

One element of an intentional misrepresentation claim under Wisconsin law is justifiable reliance. To prove the element of justifiable reliance, a plaintiff must show that they justifiably relied on the representation to their detriment. *See Kaloti*, 2005 WI 111, ¶ 12 (noting that a plaintiff must show that they "believed the statement to be true and relied on it to his/her detriment") (citation omitted).

Justifiable reliance requires that the creditor not "'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010) (quoting *Field v. Mans*, 516 U.S. 59, 71 (1995)). "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." *See Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 43, n.26 (1980) (quoting 3 Restatement (Second) of Torts, § 541 (1977)). Consistently, "[a] plaintiff cannot justifiably rely on a misrepresentation while ignoring contradictory information that he or she knew or

17

could have discovered." *Osowski v. Howard*, 2011 WI App 155, ¶27, 337 Wis. 2d 736, 807 N.W.2d 33 (unpublished opinion) (citing *Ritchie v. Clappier,* 109 Wis. 2d 399, 404 (Ct. App. 1982)).

Here, Badalov had information that the business was struggling. Badalov's brother advised that the business "was in poor shape" and "struggling financially," and he recommended that Badalov not invest. (Resp. to Interrog. No. 7, ECF 54-1, at 260-61; Resp. to PFOF, ECF 58, ¶ 4.) Additionally, "[w]henever Badalov spoke with [Buzhunashvili], [Buzhunashvili] would tell him that the business was struggling to pay rent and to pay for operations." (Resp. to Interrog. No. 15, ECF 54-1, at 263-64.) In fact, "Defendants consistently told Badalov that they needed money and the financial situation of the Banquet was dire." (*Id.*)

Badalov had information that directly contradicted Defendants' alleged assertions that the business was or would be financially successful. Therefore, Badalov could not have justifiably relied on those assertions.

### 3.   The Forney Lawsuit Omission

Finally, Plaintiffs claim that Defendants intentionally concealed the existence of the Forney Lawsuit. "The general rule is that silence, a failure to disclose a fact, is not an intentional misrepresentation unless the seller has a duty to disclose. If there is a duty to disclose a fact, failure to disclose that fact is treated in the law as equivalent to a representation of the non existence of the fact." *Ollerman*, 94 Wis. 2d at 26; *see also Kaloti*, 2005 WI 111, ¶ 15 ("The usual rule is that there is no duty to disclose in an arm's-length transaction. However, courts have carved out a number of exceptions to that rule and have refused to apply the

18

rule when to do so would work an injustice.") (citations omitted). Whether a duty to disclose exists is a question of law. *Ollerman*, 94 Wis. 2d at 27.

A party to a business transaction has a duty to disclose where: "(1) the fact is material to the transaction; (2) the party with knowledge of that fact knows that the other party is about to enter into the transaction under a mistake as to the fact; (3) the fact is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it; and (4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact." *Kaloti*, 2005 WI 111, ¶ 20; *see also Beuttler v. Marquardt Mgmt. Servs., Inc.*, 2022 WI App 33, ¶ 15, 404 Wis. 2d 116, 978 N.W.2d 237.

Importantly for this case, the defendant must have knowledge that the omitted fact is material to the plaintiff. *See Bakery Bling v. Matrix Packaging Mach., LLC*, 685 F. Supp. 3d 718, 745 (E.D. Wis. 2023). In *Bakery Bling*, the plaintiff sought equipment to automate the filling of royal icing into premade bags for its cookie and gingerbread house kits. *Id.* at 728. During testing of its equipment to be sold to the plaintiff, the defendant used watered-down icing and different bags but did not inform the plaintiff. *Id.* at 730-33. The court held that the defendant had a duty to disclose that the machine would not work with the plaintiff's specific icing and bags because the defendant knew that was the purpose of the purchase. *Id.* at 745 ("Defendant also had every reason to suspect that the Machine would not, in fact, function properly and as contracted for with Plaintiff's non-watered-down icing and its polyethylene bags.").

19

Similarly, in *Kaloti*, the Wisconsin Supreme Court held that the plaintiff properly pleaded a misrepresentation claim based on failure to disclose. 2005 WI 111, ¶ 22. The plaintiff wholesaler entered into a contract to buy products from the defendant manufacturer. The defendant knew the plaintiff intended to re-sell the products to large stores, and the defendant did not disclose that it also intended to sell the same products directly to large stores, thereby competing with the plaintiff and largely denying the plaintiff of its customary market. *Id.*

Here, in contrast, Plaintiffs did not submit evidence that Buzhunashvili knew Badalov was about to enter a transaction under a mistake as to a material fact. Badalov avers that he would not have invested in EMIL Corp. if he had known about the Forney Lawsuit. (Badalov Decl., ECF 57, ¶ 8.) This might be sufficient to establish that the information was material to Badalov. But Plaintiffs also need to establish that Buzhunashvili *knew* it was material. On this point, Plaintiffs state only that "[a] lawsuit of this magnitude absolutely be material to any person investing in a business of comparable size to the Banquet." (ECF 56 at 9.) They cite no evidence for this statement. Reliance on purported truisms is not sufficient on summary judgment.

For the same reason, Plaintiffs cannot establish a critical element of their claim under § 523(a)(2)(A). "Scienter, or the intent to deceive, is also a required element under § 523(a)(2)(A) whether the claim is for a false representation, false pretenses, or actual fraud." *Gasunas v. Yotis (In re Yotis)*, 548 B.R. 485, 495 (Bankr. N.D. Ill. 2016). "Intent to deceive is measured by the debtor's subjective

20

intention at the time of the representations or other purportedly fraudulent conduct." *Id.*

Plaintiffs cite no evidence that would establish Buzhunashvili's intent. Based on the summary judgment record, from Buzhunashvili's perspective, Badalov had knowledge that the business was in financial trouble but had decided to invest anyway based on his friendship with Buzhunashvili. One aspect of that financial trouble was the Forney Lawsuit, but Buzhunashvili would have no reason to know that this additional information would have led Badalov not to invest given all the negative financial information Badalov had already received. In addition, Badalov was making timely payments to Forney based on the parties' settlement agreement, and those payments continued until November 2023, after Badalov's investment was complete.

Plaintiffs therefore have not carried their burden on summary judgment to present evidence from which a factfinder could conclude that Buzhunashvili knew that Badalov entered the transaction under a mistake as to a material fact or that Buzhunashvili intended to deceive Badalov.

## CONCLUSION

The Court concludes that there are no disputed issues of material fact based on the evidence presented, and that Defendants are entitled to judgment as a matter of law dismissing Plaintiffs' adversary complaint. Plaintiffs have not submitted sufficient evidence to establish that Defendants owe them a prepetition debt under nonbankruptcy law. Without an underlying debt, there is nothing for

21

the Court to declare nondischargeable under 11 U.S.C. § 523(a)(2)(A).  Plaintiffs

also cannot establish required elements of their claim under § 523(a)(2)(A).

## ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiffs Seymour Badalov and

Natalia Khlestova are entitled to no relief in this adversary proceeding and

summary judgment shall be granted in favor of Defendants Emin Buzhunashvili

and Irene Gelfand.

IT IS FURTHER ORDERED that the Clerk shall enter judgment consistent

with this order.

### # # #

22